## No. 304.

### JOHN R. JONES VS. JOHN LAKE, SHERIFF, ET AL.

1. A purchaser of real property at sheriff's sale, made under *fi. fa.* in the foreclosure of a special mortgage, can not acquire or take title to any other property than that coming within the description recited in the act of mortgage.

2. As against a seizing creditor of such purchaser's vendor, said purchaser, seeking to arrest the sale by injunction, on an allegation of *his* ownership as adjudicatee of the property seized, is in duty bound to make out his title by clear and indisputable written evidence.

3. In such an injunction suit, neither the verity, nor validity of the *judgment* is put at issue, and it is clearly incompetent for plaintiff to attack or question the right of the plaintiffs in execution in any other respect.

A PPEAL from the First District Court, Parish of Caddo.
    Taylor, J.

### Wise & Herndon for Plaintiff and Appellee:

1. A mortgage given on a tract of land is sufficiently descriptive if it is reasonably accurate and full in itself so as to inform the public what property is covered by it. (24 An. 519, Consolidated Association of Planters of Louisiana vs. Mason et al.)

2. A mortgage or deed that describes a tract of land as being east and north of a certain tract of land, it being all the land now owned by the mortgagor in said tract, is good and sufficient and embraces all of the land in said tract or block.

3. When the intent of the parties is doubtful, the construction put upon it by the manner in which it has been executed by both or by one with the express or implied assent of the other furnishes a rule for its interpretation. R. C. C. Sec. 1956.

### R. J. Looney for Defendants and Appellants:

#### EXCEPTION NO CAUSE OF ACTION.

1. The question is not one of a defective description, because the land seized by defendants is entirely different land from that claimed by plaintiff's act of sheriff's sale.

2. The motion to strike out all allegations as to the claims of McCutcheon should have been sustained, because: "But one question can be heard or adjudicated, and that is, is the plaintiff the owner by legal evidence of the property actually seized?" See Simpson vs. Mills & Cleveland, 12 An. 173; McRea vs. Brown, 12 An. 181.

3. The judgment of defendants and sought to execute is an indivisible obligation. See Rev. Code 2108, 2109; Hughes vs. Patterson, 23 An. 679.

4. No injunction could legally be given or heard without making Mrs. Stockwell a party and giving a bond in favor. Robertson vs. Travis, 4 An. 151.

### ON THE MERITS.

The District Judge, in his opinion, says he knows of no law creating a difference of construction between acts of sale on *fi. fa.* and mortgages.

The difference is marked and broad.

Mortgages, like all conventional obligations, are construed against him who contracted for the obligation. See Rev. Code, Arts. 1957, 1958, 1959; 7 An. 458, Shepherd vs. Phillipps; 10 Rob. 53, Andrews vs. Rhodes.

But in forced sales under a *fi. fa.*, the rule is strictly in favor of the defendant in execution. 7 An. 305, Peekersgill vs. Brown; 1 An. 338, McGary vs. Owen; 4 An. 293, Gales vs. Christy; 5 An. 255, Scrull vs. Payne; 37 An. 203, Veal vs. Moll; 9 An. 540, Snyder vs. Brady; 13 La. 205; 6 An. 452.

All and every word and clause in a written instrument must be interpreted one by the other, giving each word or clause the sense that results from the entire act. R. C. 1955; 11 An. 98; 9 Rob. 21.

The opinion of the court was delivered by

WATKINS, J. Petitioner, alleging ownership and possession, in good faith, of the following described real property, viz.: " All that portion of lot, or block, sixty-eight (68), of the city of Shreveport, north and east of Bosworth's boundary line," owned by Mrs. M. D. C. Cane, in 1874; and that he acquired the same at sheriff's sale made in 1886, in the foreclosure of a special mortgage executed by Mrs. Cane, in favor of one Leavenworth, in 1874, and in the *proces verbal* whereof said property is described as "*all* of lot or block sixty-eight (68), north and east of Bosworth's boundary line," enjoins the seizure and sale of same, under an execution issued under a judgment in the suit entitled M. J. McCormick vs. M. D. C. Cane.

He alleges the death of the plaintiff in execution, and represents that his heirs are Mrs. Anna B. Stockwell, Miss Williamena B. McCormick, and Mr. William B. McCormick; and he avers that Mrs. Stockwell has no interest in said judgment or execution, because she has long since conveyed her interest therein to S. B. McCutcheon, who denies having authorized the issuance of said writ. He prays judgment for five hundred dollars general damages, and two hundred and fifty dollars attorneys' fees, against

Williamena B. and William B. McCormick, *in solido*, and perpetuating his injunction.

The two defendants named moved to strike from the petition the allegations in reference to the assignment by Mrs. Stockwell to McCutcheon, and his denial of authority for the issuance of the writ of execution, on the ground that they are foreign to any legal investigation of this case; and no right or interest, as such, of Mc-Cutcheon, can be determined in this case, as the plaintiff " must stand against the world on his own title; and further, because neither Mrs. Stockwell nor McCutcheon are made parties to this suit."

This motion being overruled, the two defendants named filed an answer in which they first plead a general denial, and then urged in a special defence, that they caused to be seized, in the execution of their judgment, " a certain lot of ground in that portion of block sixty-eight (68) adjoining and to the north and northwest of the land sold by S. Bennett and Mrs. M. D. C. Cane to George M. Nicholls, in April, 1848; and since said time has remained *a separate and distinct portion* of block sixty-eight, and is the property of Mrs. Cane, and that her title thereto has never been divested."

Their answer then avers that plaintiff's petition and annexed documents disclose no grounds for this action. And it further avers that the execution enjoined runs in favor of Anna B. Stockwell as a co-heir of the two defendants named, but the injunction bond does not. They pray the dissolution of the injunction, with $500 general damages, and $500 special damages awarded against the plaintiff.

On these issues the parties went to trial, and there was judgment in plaintiff's favor, perpetuating his injunction without damages.

I.

It is our opinion that the defendants' motion to strike from the plaintiff's petition the allegations referring to the assignment of Mrs. Stockwell to McCutcheon of her interest in the judgment, execution of which is enjoined, should have prevailed, because such an issue can not be litigated in this suit. The controversy presented by the plaintiff, primarily, is title *vel non* of the property seized, and it is of no consequence to him what particular person is owner of the judgment under which same is seized. The injunction is directed against the seizure and sale of particularly described real property,

and not against the judgment. This suit is only a third opposition coupled with an injunction.

We can not, in the present state of the case, remedy the error, otherwise than by declining to consider the averments referred to. The informality suggested in the injunction bond can not be considered either, as there was no motion made to dissolve on that account filed *in limine*.

## II.

The controversy being narrowed within proper limits, may be stated in this wise: The defendants seized the property claimed, amongst others, as that of Mrs. Cane, and the foundation of plaintiff's claim of ownership is the mortgage from Cane to Leavenworth, which he, as assignee, executed against the mortgaged property, and because the adjudicatee of same at execution sale. Hence the question at issue, and to be determined is, whether the plaintiff acquired title thereby to the particular property in dispute; and that must be ascertained by reference to the acts of mortgage and the sheriff's sale. If these fully and sufficiently describe the property to convey a title, the plaintiff's injunction must be perpetuated, leaving the defendants to assert whatever adverse rights they have in some other proceeding.

The defendants were seeking, by an execution of a judgment *via ordinana*, to collect a debt. There was no effort to enforce a mortgage. There is no claim of that kind set up in their answer. Plaintiff enjoined the sale of particular property on the ground that he had acquired title from Mrs. Cane in the foreclosure of the Leavenworth mortgage. He can take nothing by this action *other* than that Mrs. Cane mortgaged to Leavenworth, for the plain reason that, in the confessed foreclosure of that mortgage, he could not cause to be seized and sold any property other than that which she had hypothecated to his assignor.

Referring to the authentic act of mortgage from Cane to Leavenworth, we find the following is the description of the property which is therein hypothecated, viz.: "All that portion of lot or block sixty-eight (68), north and east of Bosworth's east boundary, now owned by Mrs. M. D. C. Cane."

The same description is contained in the *fi. fa.* under which sale was made to the plaintiff under judgment in the suit entitled John R. Jones vs. Mrs. M. D. C. Cane.

The advertisement thereof contained the same description, omitting the words "now owned by Mrs. McD. C. Cane."

The judgment recognizing the mortgage and ordering sale of the hypothecated property, recites the same description as that contained in the act of mortgage.

The sheriff's *proces verbal* of sale contains the same description.

This is identically the same description as that contained and set out in the plaintiff's petition.

The description of the property as given in the advertisement of sale enjoined is as follows, viz.:

"Part of block sixty-eight (68), in the city of Shreveport, beginning at the north corner of lot sixteen (16), in block fifty-four (54), run thence on a prolongation of the northwest boundary line of Spring street, *along the Hamilton Oil Mill line*, to Cross bayou; thence down the bayou to a point from which a line parallel with the first described line will strike the north corner of lot sixteen (16) in block fifty-five (55); thence along the northwest boundary line of block fifty-five (55), and the prolongation of the same to the point of beginning, containing about an acre and a half, fronting on Cross bayou on one side, and the Texas and Pacific railroad on the other."

The question to be solved is, whether the property claimed by the plaintiff is contained in the description of the property as advertised for sale.

Then we must ascertain what is the property described in plaintiff's deed, as "all *that portion* of block sixty-eight (68) *north and east of Bosworth's boundary* line."

There is nothing ambiguous or uncertain in this description. "Bosworth's boundary line" is a fixed and definite limit, and can be easily located; and hence "that portion of block sixty-eight (68) north and east" of that line is easily located. No one examining the map of the city of Shreveport could easily mistake its locality, or the extent of its area. In their printed brief defendant's counsel aver that they "never contested (plaintiff's) title to *that portion* of block sixty-eight (68) covered by his deed, or by the mortgage of Leavenworth" (p. 7).

Reference to the maps in evidence discloses that block sixty-eight (68) fronts on Cross bayou on the north, is of an irregular frontage on that side, and extends on the south side nearly the entire width of three adjoining blocks. At one time this property

was owned by Mrs. Cane and one Bennett, and they sold off a portion of it, situated in the centre, in March, 1848, to George M. Nicholls.

The description of the property sold is as follows, viz.:

"The following piece of ground in the town of Shreveport, and known as a part of block number sixty-eight (68), and described and bounded as follows, to-wit:

"Commencing at the corner of block No. 54, and corner of lot No. 9, of said block, it being the northwest corner of said lot and block, and running in a direct line as a continuation of the northwest boundary (line) of Market street, until said line reaches Cross bayou; and running down said bayou until it reaches a line drawn from Cross bayou parallel to the line first above described, and extending from the bayou to the northwest boundary line of block numbered fifty-four (54) in the prolongation of said line; thence along said last line to the starting point, so as to include within these boundaries two and five-eighths (2⅝) acres."

By this conveyance, block 68 was completely severed and sub-divided into three distinct and separate lots, each one distinct, separate and well defined—as will appear from the DeVoe map in evidence—the 2⅝ acres lot sold to Nicholls reaching across block 68, from the corner of lot No. 9, in block 54, to Cross bayou, and completely covering the intervening area.

The portion of block 68 to the *north and east* of the *Nicholl's lot*— which is the portion now in controversy, and precisely the same as that contained in the advertisement of the sale which is enjoined— is found to contain one and one-half (1½) acres.

That portion of block 68 to the *west* and *south* of the *Nicholl's* lot is much larger than either of the other two lots, the distance from front to rear being greater.

The portions sold to Nicholls was adjudicated to W. E. Hamilton, by same description, in December, 1868, and thereon he erected and established his oil mill plant, as indicated on the DeVoe map.

On the 7th of December, 1871, Mrs. Cane and Mrs. McCormick conveyed to A. W. Bosworth the following described lot, viz.: "Being a part of block sixty-eight (68), in said city, according to the original map, said lot or block sixty-eight (68) having been allotted to these vendors in the partition of the original Shreveport Town Company of record, and the land herein conveyed is that part

of said block or lot sixty-eight (68) formed as follows, by projecting the dividing line between lots eleven (11) and twelve (12) of block thirty-seven (37) to Cross bayou, running back on said projected line two hundred (200) feet; thence running a line eighty (80) feet in length perpendicular to said projected line and parallel to the northwest front of said block thirty-seven (37) ; and thence running a line one hundred and eighty-nine and one-half (189½) feet to Cross bayou; and thence along said bayou to the front where the projected line between lots eleven (11) and twelve (12) of block thirty-seven (37) strikes the said Cross bayou; and the property herein conveyed corresponds to lots twelve (12) and thirteen (13) of the *proposed plan*, in future extension of a block between Market and Edwards streets and Cross bayou," as will be shown by the H. P. Leavenworth survey of November 27, 1875—shortly antecedent to this sale.

Subsequently there was a partition between Mrs. Cane and Mrs. McCormick; and on the 10th of January, 1874, Mrs. Cane consented to the Leavenworth mortgage aforesaid, by the description given *supra*, to-wit: " *All that portion* of lot, or block, sixty-eight (68), *north and east of Bosworth's east boundary*," and not as stated in the plaintiff's petition, viz.: "all of lot or block sixty-eight (68) north and east of Bosworth's boundary line," the two descriptions being materially different.

A full and complete description of the Bosworth purchase has been given, in order to show that the " *Bosworth's east boundary* " was a fixed and established line, by the Leavenworth survey of November 27, 1871, antecedent thereto—the surveyor becoming, subsequently, the mortgagee of Mrs. Cane, Bosworth's vendor.

We have also given a full and complete description of the property Nicholl's purchased from Cane and Burnett in 1848, for the purpose of showing what is meant by " the northwest boundary line of Spring street, *along the Hamilton Oil Mill line*," which occurs in the advertisement of the enjoined sale; and to show that ever since 1848 the Hamilton Oil Mill property has had a definite and fixed eastern boundary line, as will appear from the De Voe map.

It is upon these descriptions, thus established by contemporaneous public records, that the defendants rely for the assertion in their answer, that Mrs. Cane, their judgment debtor, still owns " that portion of block sixty-eight (68) adjoining and to the north and

northeast of the land sold by S. Burnett and Mrs. M. D. C. Cane to George M. Nicholls, in April, 1848," etc.; and that the plaintiff did not acquire same under the Leavenworth mortgage in 1886. In January, 1874, when Mrs. Cane consented a mortgage to Leavenworth, she, as the vendor of Nicholls and of Bosworth, respectively, knew, and is conclusively presumed to have known, the "Bosworth east boundary line," as well as the "Hamilton Oil Mill east line;" and Leavenworth, who made the survey of the *locus in quo* in November, 1871, must also have known them when he accepted the mortgage of Mrs. Cane, in 1874.

Under these circumstances, it seems quite clear that when Leavenworth accepted the mortgage of Mrs. Cane on "all that portion of lot or block sixty-eight (68) north and east of Bosworth's east boundary," situated on the *extreme northwestern* part of that block, he did not acquire a mortgage on "that portion of block 68 adjoining and to the north and northeast of the land sold" by Cane and Bennett to Nicholls in 1848, situated on the *extreme northeastern* part of the block; and between which two properties the Hamilton Oil Mill property of $2\frac{5}{8}$ acres *has intervened since 1848.*

It appears that in 1886 the plaintiff instituted suit against Mrs. Cane in the foreclosure of the Leavenworth mortgage, of which he was the assignee, and became the adjudicatee of the hypothecated property, by the *identical* description given in the mortgage, thereby placing himself in Leavenworth's place and stead, paying therefor $100.

It further appears that under expropriation proceedings in 1881, subsequent to the mortgage, though antecedent to this sale, the New Orleans Pacific Railway Company acquired a *small portion* of block 68, situated east and south of the Bosworth lot, for which they paid on the Leavenworth mortgage $2750, same being equal to the *capital* of the mortgage debt and cost.

In 1871 Bosworth paid for the small lot he purchased $5300. Nicholls paid, in 1848, for the $2\frac{5}{8}$ acres he purchased of Cane and Bennett, $2625, and Hamilton paid, in 1868, for the same property $8000.

Is there any reason to suppose that the lot in question, adjoining as it does the Hamilton Oil Mill property on the east, of $1\frac{1}{2}$ acres, was not worth as much proportionately? Can it be supposed that this valuable property, *in addition to the residue of the property ad-*

*jacent to the Bosworth property*, would have been adjudicated to the plaintiff for $100 in 1886? Such suppositions are repugnant to reason, in view of the fact that the testimony in this case shows that the property in controversy is alone worth $5000.

To fully disclose the plaintiff's contention, we quote the following pertinent extracts from the brief of plaintiff's counsel, at pp. 4 and 5, to wit:

"This is the description: The said Mrs. M. D. C. Cane declares that she does, by these presents, specially mortgage and hypothecate unto and in favor of said F. P. Leavenworth, his heirs and assigns, the following described property, situated in the city of Shreveport, La., to wit: *All of that portion of lot* or block sixty-eight (68) north and east of Bosworth's east boundary, *now owned by the said Mrs. M. D. C. Cane.*

"It is admitted she owned the land in controversy at date of mortgage, and it is averred in answer she owned it in 1848. Now she mortgages all the land east and north of the Bosworth tract, and then adds, now owned by the said Mrs. M. D. C. Cane. That is, if she owned any more land in block or lot 68 she mortgaged that also, as we will show further on."

Counsel subsequently adds the following, viz.:

"The extreme portion of said block 68, east of Bosworth's east line, is the tract marked Jno. R. Jones, and is the tract in controversy. W. R. DeVoe, the city surveyor, made this map and says this tract is east of Bosworth's tract and a portion of lot or block 68 of the city of Shreveport."

We do not consider the language of the act of mortgage as hypothecating *all* the land east and north of the Bosworth tract, then owned by Mrs. Cane. Had she so intended, she would have employed different and more comprehensive language, better calculated to have conveyed such an intention. The statement of DeVoe, as a witness, is strictly true, but it does not throw any light on the question.

The learned judge, in his exceptionally able opinion, says:

"If, in the mortgage to Leavenworth, and sale to Jones, the land had been merely described as *all the land then owned* by her (Mrs. Cane) *in block 68*, it *would have been sufficient.* No one could have been misled by such a description, and no difficulty could have been met in identifying the property."

But he fails to state that such was the case. He, inferentially, admits that such was *not* the case; and that is the precise reason why we are of opinion that the Leavenworth mortgage did not cover *all* the land Mrs. Cane then owned in block 68.

For this reason we consider the judge's conclusion, clearly, a *non sequiter*.

The learned judge cites the fact that the defendants remained inactive and silent while Jones' sale was pending, as an evidence of their manifest acquiescence in his purchase. But the same question recurs; the purchase of *what* property? The argument is self-destructive.

He, also, cites the expropriation proceedings *supra*, and her acquiescence in the application of the proceeds as a credit on the Leavenworth mortgage debt, as an acquiescence in the *existence* of a mortgage on the property. But the question instantly arises: *what* property was mortgaged?

To each and all the questions, the answer is the same.

Reference is made, in the brief of the plaintiff's counsel, to an averment made by Mrs. Cane in her answer in the expropriation suit, to strengthen the Leavenworth mortgage and Jones' title; but that document forms no part of the evidence offered, was not referred to in the plaintiff's petition, and is not mentioned in the judge's reasons for judgment. To that suit, neither the plaintiff nor the defendants were parties or privies. The defendants are Mrs. Cane's grandchildren, but they are not her heirs, because she is still living. It is not possible for us to give it any effect. The plaintiff must stand or fall upon the title he derived at sheriff's sale.

The testimony shows that plaintiff has been, since his purchase in 1886, exercising some rights of ownership over the property, such as grading, and the like. His right to claim compensation therefor should be reserved; but the judgment in his favor must be reversed, and his injunction dissolved, with costs, without damages; the defendant's right being, in this respect, reserved likewise.

It is, therefore, ordered and decreed that the judgment appealed from be and the same is amended and set aside; and it is now ordered and decreed that there be judgment dissolving plaintiff's injunction at his cost, without damages, the right of defendants being reserved in this respect.