Statement of the Case.
NICHOLLS, J.
The present is a petitory action, in which plaintiff alleged that he was the owner of the following property situated in the parish of Natchitoches, viz.: Lots 1 to-19, both inclusive, with all the buildings and improvements thereon, containing, with the batture, about 720 acres, more or less, bounded north by lands formerly of John Sims and Sims Bayou, east by lands formerly of Cyriaque Perot, south by Red river, and west by lands formerly of Boyce, generally known as the “Tranquellin Plantation,” and originally sold at sheriff’s sale in the suit of Norbert Scopini v. Tranquellin Lecompte, No. 7,773 on the *197 docket of the district court. Said sale was made March 14, 1872, recorded in Book 67, folio 21 (a map of same being attached to and made a part of said sale), at which sale Norbert Scopini became the purchaser and went into possession of the same. Petitioner is owner of said land by purchase on January 2,1904, recorded in Book 112, folio 317. Petitioner now shows that he and his authors have owned said land and been in possession of the same for more than 30 years, until August 8, 1903, when Leopold Levy, pretending to have title to 80 acres thereof, being a portion of said land above described, took possession of the same, and refused to' vacate and deliver the same to petitioner. The land wrongfully claimed by Levy is a part of the west half of lots 3, 5, 7, 10, 13, and 14, worth at least $2,400. Levy owes rent to petitioner for the year 1904, at $6 per acre, totalizing $480, and like rent per annum thereafter until final judgment. Wherefore petitioner prays for service and citation of Leopold Levy, and for judgment against him annulling his title, if any he has, to said land, and decreeing petitioner owner of the land, all of the lots 1 to 19, inclusive, and batture, including the SO acres described above, and placing him in possession of the same; for judgment against Leopold Levy in the sum of $480, rent of said 80 acres of land for the year 1904; for further judgment,for a like amount annual rent thereafter until final judgment; and for costs and general relief.
The defendant answered, admitting that he purchased the lands named, and that he was in possession of the same, but otherwise denying all of plaintiff’s allegations. He averred that he purchased from J. W. Freeman, sheriff of the parish of Natchitoches, at sheriff’s sale, on the 8th day of August, 1903, in the suit of J. B. Atkins v. J. E. Hale, No. 12,870, 80 acres of land in the parish above named, being the property above named, or believed to be the same, and described in his act of sale as being bounded on the north and east by lands of Lecompte, south by Red river, and west by Fouts and Grappe, paying for the same at sale the sum of $340 cash; that he has been in the full and peaceable possession of the same ever since; that he and his vendors and his and their authors have been in free, full, and peaceable possession of said property under good and valid title translative of property, good and valid on their faces, for over 10 years, and he therefore specially pleads the bar and prescription of 10 years in favor of his title and in bar of his action; that he and his authors have been in the free, full, peaceable, open, and uninterrupted ownership of the said property and possession of the said property for over 30 years, with and without a title, and he therefore pleads the bar and prescription in favor of his title against said actions and suit of over 30 years' prescription. He further shows that he has a warrantor in this suit and action, John B. Atkins, a resident of the parish of Red river, at whose suit and instance said property was sold, and who received the purchase price for the same, and he desires and has a legal right to call in warranty said J. B. Atkins to defend this suit in his stead, and warrant and defend his title to the said property above named and purchased by him at said sheriff’s sale; that his said warrantor be cited and served according to law, and he have on trial of this case judgment against warrantor for whatever judgments may be rendered against him, for all other legal process and legal delays. Wherefore he prays that his pleas of prescription of 10 and 30 years in favor of his title and in bar of said suit be sustained; that his warrantor, John B. Atkins, be cited and served and called in warranty to defend him in this suit and defend the title to the said property above named and purchased by him, and on trial of this suit that he have and recover against his said warrantor judgment in his favor against said John B. Atkins, war *199 rantor, in whatever sum, amount, or claim as may be rendered against bim; that plaintiff’s demands be rejected and disallowed in full, and this suit be dismissed, at bis costs; and for general relief.
J. B. Atkins, being called in warranty, answered. After pleading the general issue and reserving the benefit of all exceptions, pleas, and defenses of the defendant, Leopold Levy, to the plaintiffs suit, be averred that Leopold Levy and bis authors bad bad the public, actual, and open possession of the land for more than 30 years under title translative of property in perfect good faith, and the title of Levy was absolutely good, but, if there be any defects in same (which he denied), that same was cured by the prescriptions of 10 and 30 years, which he specially pleaded in bar.
The district court rendered judgment in favor of the defendant, Leopold Levy, and of the warrantor, J. B. Atkins, and against the plaintiff, G. F. Walker, rejecting the demands of the plaintiff, and dismissing his suit. It further decreed that Leopold Levy was the owner of the land in dispute 'described in plaintiff’s petition, and quieted him in his title and possession.
In its opinion the district court referring to the plaintiff said:
“As the foundation of his title he introduced the original procSs verbal of sale by the sheriff in 1872 in the suit of Scopini v. Lecompte.
“The deed described the land sold by lots, and makes no reference to sections, boundaries, or other means of description.
“In order to identify the land sold with that in dispute, plaintiff also offered in evidence a map, which, so far as the lots therein designated and the area of them are concerned, corresponds exactly with the sheriff’s procSs verbal. Objection was made to this offering on the ground that the map was not authenticated, that it is no part of the sheriff’s proees verbal, and that it was [is] an attempt to establish title to real estate by parol evidence and by an unrecorded instrument. I admitted the document, reserving the right to disregard and reject it if, upon investigation and consideration, I should conclude that it was inadmissible.
“The view I take of the case in other respects renders it unnecessary to decide the serious question involved as to whether or not the map ought to have been rejected.
“The land in dispute lies in section 55, township 11, range 8.
“By reference to the United States map (Exhibit 9) it will be seen that this entire section, containing 375.08 acres, was confirmed to John C. Carr, as per certificate Bl,993. It is further shown, with reasonable certainty, I think, that Carr sold this land to Joseph Perot in 1816 (see document 13), which, on first offering, was excluded on the objection by plaintiff’s counsel, but subsequently received without objection.
“Now, the sheriff’s sale in 1872 to Scopini was for the foreclosure of a mortgage given to him by Tranquellin Lecompte, and the description of the mortgaged property in the act is as follows:
“ ‘All that certain tract of land or plantation on which he, the said Tranquellin Lecompte, now resides, situated about five miles above the town Compte, on both sides of the Red river, containing eleven hundred and four arpents and three-fourths of an arpent, bounded above on both sides of the river by lands of Mrs. Joseph Perot,’ etc. (Italics mine.)
“The description on the procos verbal of the sale by the sheriff is substantially the same as above.
“There is not one word of evidence to show that Tranquellin Lecompte ever owned a foot of land in section 55, and as it is shown that all of this section did at one time belong to Joseph Perot, and as both the mortgage and the preamble of the proees verbal mention the western or upper boundary of the land sold as being the land of Mrs. Joseph Perot, I think the court is bound to assume that, if any land in section 55 was sold by the sheriff, he sold property which was not covered by the mortgage and the judgment under which he acted, and that the sale quoad this land was an absolute nullity, which could confer no title whatever upon the purchaser. Landreaux v. Foley, 13 La. Ann. 114; Jones v. Lake, 43 La. Ann. 1024, 10 South. 204.
“Without a title plaintiff cannot succeed, save under his plea of prescription.
“Admitting, for the sake of argument that a plaintiff in a petitory action, who stands upon his title, can be permitted to invoke the aid of prescription, which is doubtful, he must show that he has possessed as owner for the full term of 30 years; and, more than this, his possession, in the beginning, at least, must have been actual, and not merely civil.
“Plaintiff’s evidence on this score is certainly too vague and uncertain.
“Not a single witness attempts to fix the date at which plaintiff’s author, Scopini, went into possession of any of the land purchased by him, much less of the strip of land in dispute, and Copella is the only one who even attempts to fix the period of Scopin’s possession. In answer to a question by 'plaintiff’s counsel as to how long Scopini had been in possession and cultivated it, his answer was, ‘Over 30 years,’
*201 “Surely something more than this is required of a plaintiff in a petitory action against a party in possession.
“But I think that all of the evidence makes it highly probable that Hale ousted Scopini of his possession several years before the expiration of the term of prescription pleaded, even admitting that he went into possession .immediately after the sale.
“Henry was there in 1904, and he says that the Levy fence looked as if it had been built in the last two or three years.
“Walker, the plaintiff, went on the land in January, 1903, and he says that Levy was in possession then. Levy bought at sheriff’s sale in 1903, and it is quite certain that Hale, the judgment debtor, had occupied and cultivated a portion of the tract for several years prior to that time. He says that when he went up there the fence was down all around the place, except a little in front, but that the rails and some wire were there.
“Fouts (Faust, p. 27) assisted Hale to put up the line of fence inclosing the 80 acres in dispute five years ago.
“On the whole, I think the evidence destroys, • rather than sustains, the plea of prescription.
“The plaintiff's demand must be rejected.”
The plaintiff appealed to the Court of Appeal. That court rendered the following judgment:
“This is a petitory action, instituted by G. F. Walker, for 80 acres of land, being part of the west half of lots 3, 5, 7, 10, 13, and 14, lying in section 55, township 11. N., range 8 W., claimed by plaintiff, as owner of a part of the plantation known originally as the ‘Tranquellin Lecomnte,’ purchased by Norbert Scopini. and acquired by plaintiff as follows:
“N. F. Scopini acquired the land at sheriff’s sale under foreclosure of mortgage in the Succession of T. Lecompte.
“Scopini died, and his widow and two heirs partitioned it, and it became the property of his son John F. Scopini. John F. Scopini sold it to Jesse Thomas, Jesse Thomas to Andrew Querbes, and Querbes to Adams, and Adams to Walker, the present owner.
“This is the chain of title relied upon by plaintiff. The defendant claims that the property in controversy was acquired by Hale from Mrs. Joseph Perot, through his deceased wife, Mrs. J. E. Hale (afterwards Mrs. Rogers), and by Mrs. Perot through her husband, Joseph Perot, and he from John C. Carr, and he (the said Carr) from the government. The above sets forth the chains of titles relied upon by plaintiff and defendant. It is true that the plaintiff in a petitory action must stand upon the strength of his own title, and not the weakness of his adversary. The plaintiff further alleges and sets up the plea of prescription of 30 years. The petitory action admits possession, and it appears that the plea of prescription was properly overruled. This reduces the case to the question of the validity of the title of the property in controversy in the plaintiff. The plaintiff' in this case traces back the title to Norbert Scopini, as shown by sheriff’s sale and deed of March 14, 1872. The description of the said land is as follows.
“ ‘All that certain tract of land or plantation on which the said T. Lecompte now resides, situated about five miles above the town of Compte, Natchitoches parish, La., on both sides of Red river, containing 1,104% arpents, bounded above, on both sides of the river, by lands of Mrs. Joseph Perot, and below, on both sides of the river, by lands of Cyriaque Perot.’
“There was no description of the land by section or subdivisions. Therefore the court, taking all the documents filed in evidence, and comparing them with the United States map, must decide where the 80 acres of land now in controversy is located and who is the owner.
“AYe find from the testimony that the property purchased in 1873 was composed of 1,104% arpents, which said arpents, reduced to acres, amounted to about 926.45 acres. This land was to be sold in legal subdivisions and not exceeding 50-acre lots. The land was surveyed by Mr. Degan prior to the sale, and a map dividing into lots of 40 acres and less was filed and found in the suit of Lecompte. It may be that the map was not admissible in evidence to establish a title, but it can be used as corroborative of the procés verbal under which the land was purchased at that time. AYe find that the document 15 filed by defendant, being the last will and testament of Mrs. Marie Fredieu, the grandmother of Hale, from whom the defendant claims title, donates to her children, Joseph Emile, Pierre Evariste, Marie Emerline, and Marie Emily Perot, children of J. B. I. Perot, ‘that portion of my plantation on which I reside, situated on the left side of Red river, descending, having 4 arpents front, and containing about 160 arpents, more or less.’ Taking as true the contention of defendant that the property so bequeathed was a part of section 55, it could not exceed 160 arpents, with a frontage of 4 arpents, which would leave the plaintiff’s line substantially where it was originally placed, bounded by the lands of Mrs. Perot; and taking the testimony of J. O. Henry, surveyor, and referring to the map filed in evidence, as well as to the United States map, we find that, if the line should have been run by Mr. Gaiennie I-Iyams onlv four arpents frontage, there could have been no controversy in regard to the quantum (Of land in the original T. Lecompte plantation — that is to say, the 1,104% arpents, less the amount that has been shown to have been lost by the caving of the river. The court is of the opinion that the mistake occurred from the error of the late clerk, George AY. Kearney, who described the property as 200 acres, in lieu of 160 arpents; and the surveyor, Mr. I-Iyams, who was called upon to divide the property between the surviving heirs, merely ran his line in accordance with the erroneous deed of Kearney to effect an amicable division between said *203 heirs, and designating to each their respective property and line. This survey was not made to settle the boundary line existing between the T. Leeompte plantation and the lands of Mrs. Joseph Perot, as per deeds of record and in evidence, and can have no effect in our mind upon the question as to what constituted the T. Lecompte plantation, the author from whom your plaintiff claims. The record shows that the defendant claims under a title from John C. Carr of certain property acquired in 1816. Certainly this cannot be the property in contest, for John C. Carr only acquired by entry No. Bl,993, section 55 containing 375 acres in the year 1837, and it ’would be a matter of impossibility to have sold property which was in the hands of the government and never separated from the public domain until the year 1837. Therefore it appears to us that the land in controversy is the property of the plaintiff, who is the legal owner thereof, and decreed the possessor thereof, and placed in possession; that the appellee pays the costs of both courts.
“The defendant in this case calls in warranty J. B. Atkins, from whom he claims to have derived his title. Under the view of the case we have taken, the call in warranty should be sustained, and there should be judgment against the said J. B. Atkins in the full sum of $340, with interest from the 8th day of August, 1905, and that the said J. B. Atkins, warrantor, do pay all the costs incurred by the defendant in both courts.
“Therefore, for the reasons above assigned, it is ordered, adjudged, and decreed that the judgment of the lower court be avoided, annulled, and reversed, and that there be judgment as above set forth.”
Upon the application of Leopold Levy, that judgment has been brought up for review.
In behalf of Leopold Levy, counsel submits the following points:
“Plaintiff depends upon the following state of facts:
“(1) A sheriff’s deed to Norbert F. Scopini, of date March 14, 1872, which purports to have been made by reason of a sale to pay and satisfy a mortgage in favor of said Scopini, which mortgage was executed by Tranquellin Leeompte, as shown by certified copy of said act of sale, annexed hereto and marked ‘Exhibit G.’ The judgment and order of court, if any, were not filed in evidence; simply the sheriff’s deed, and nothing more.
“(2) An act of partition between the heirs of Norbert F. Scopini, which is so vague and uncertain that it is impossible to determine what property they partitioned, which act of partition is hereto annexed and marked ‘Exhibit H.’
“(3) John F. Scopini to Jesse Thomas, which does not describe the land in controversy, a certified copy of which act- of sale is marked ‘Exhibit I.’
“(4) A deed from Jesse Thomas to Andrew Querbes, which also fails to furnish a description of the property involved in this suit, a certified copy of which deed is annexed and marked ‘Exhibit J.’
“(5) A deed from Andrew Querbes to I. N. Adams, which follows the former deeds in so far as description is concerned, a certified copy of which deed is annexed and marked ‘Exhibit K.’
“(6) A deed from I. N. Adams to G. F. Walker, the present plaintiff, in which the property is described as above. A certified co_py of said act of sale is annexed and marked ‘Exhibit L.’
“(7) A map, found in the clerk’s office, supposed to have been made by a surveyor in 1872, when the property was sold at sheriff’s sale, which map was not filed by the clerk, nor recorded by him, nor referred to in any act of sale, and which map was bought by Mr. Gainnie Hyams at succession sale of the effects belonging to the succession of the surveyor who is supposed to have made the map for the sheriff, as shown by the testimony of H. M. Hyams, Clerk. The map in question does not conform with the United States maps, as is shown by the evidence of J. C. Henry, surveyor, and Gainnie Hyams, surveyor, as in shown by the extract from the evidence of H. M. Hyams, Gainnie Hyams, and J. C. Henry, which is duly certified to and annexed hereto and marked ‘Exhibit H.’
“The defendant traces his title as follows:
“(1) United States government to John C. Carr.
“(2) John C. Carr to Joseph Perot, a certified copy of which act of sale is hereto annexed and made a part hereof.
“(3) The inventory of the succession of Mrs. Joseph Perot, wife of Joseph Perot, shows that the property was inventoried as belonging to her.
“(4) The evidence shows that Mrs. J. E. Hale, afterwards Mrs. Rogers, was a daughter of Joseph Perot and Madam Joseph Perot.
“(5) The evidence shows, and it is admitted, that J. E. Hale is the only heir of Mrs. J. E. Hale, afterwards Mrs. Rogers.
“(6) The suit of J. B. Atkins v. J. E. Hale, together with judgment, writ of fieri facias, and act of sale from the sheriff to Leopold Levy under said judgment.
“It is admitted that Levy, the defendant, is a possessor in good faith of the property described in the deed from the sheriff to him, and that he is in possession of said property.
“The descriptions contained in the acts of sale relied upon by the plaintiff mention and give as to boundary the land in controversy. In the act of sale from the sheriff to Norbert F. Scopini it is recited that the land therein conveyed is ‘bounded above and both sides of the river by lands of Mrs. Joseph Perot,’ etc. (Italics ours.)
“In the other deeds, from Scopini down to and including the deed to Walker, it is declared that the land is bounded above by lands form *205 erly belonging to Mrs. Joseph Perot. (Italics OUl’S.)
“'There is no evidence whatever in the record that plaintiff or any of his authors ever owned a foot of land in section 55, in which defendant’s land, the land in this suit, is situated.
“There is no evidence whatever in the record that any of the titles relied upon by the plaintiff embrace the land in controversy, unless it is the unrecorded and unofficial map above referred to.
‘There is not a syllabus of evidence in the record that Tranquellin Leeompte, from whom plaintiff tries to trace his title, ever owned a foot of land involved in this suit; nor is it alleged or pretended that he ever had as much as a paper title thereto.
It is not pretended that, if there was an order of court directing the sale of the land in the alleged suit of Scopini v. Leeompte, above referred to, such an order or judgment was lost or destroyed.”
Opinion.
In the lower court the plaintiff relied upon his plea of prescription of 30 years, and only incidentally contended that he had title by reason of any of the transfers above mentioned.
The Court of Appeal declared in its judgment that the plaintiff’s claim to ownership through prescription acquirenda causa could not be sustained. In this position it is in accord with the district court. Both courts recognize that, in a petitory action, plaintiff, to succeed, must do so on the strength of his own title, and not upon the weakness of the defendant.
Applying that principle to the present ease, the district court rendered judgment in favor of the defendant. In so deciding we think that court reached a correct conclusion. The defendant, Levy, was and had been himself in possession of the property claimed for several years under a title translative of property. His title rested upon a judicial sale, made under a writ of seizure and sale which issued in the case of Atkins v. Hale. The property was seized in that case and sold as the property of Hale, and he was in possession of it at the time of the sale. We do not find, under the evidence, that any rights which the plaintiff may have acquired from his vendors extended to and covered the property in possession of the defendant. We have failed to discover how or when plaintiff’s authors acquired rights to or over that property.
The Court of Appeal, after declaring that the plaintiff in a petitory action is forced to rely upon the strength of his own title, seem apparently to have decided in favor of the plaintiff, for the reason that Carter, one of the authors of defendant’s title, could not possibly have sold this particular property when he did, as at the time of the sale it did not belong to him, but the title was in the government. The fact that Carter at the time of his sale had not obtained a patent, or had his rights confirmed, did not deprive him of the right of selling- the property under such rights as he had; and the subsequent recognition of those rights caused this title, when so recognized, to inure to the benefit of his vendee. We are of the opinion that the judgment of the district court was correct, and should have been affirmed, and not reversed, by the Court of Appeal.
It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal herein brought up for review be, and the same is, hereby annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the judgment of the district court be, and the same is, hereby affirmed.